UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| BRADFORD SQUARE NURSING, LLC, ) | |
| ) | |
| Plaintiff, ) | Case: 3:15-cv-00055-GFVT |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| DONNA CORNETT, as Executrix of the ) | **&** |
| Estate of Nell L. Estill, ) | **ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the Motion to Enforce Arbitration Agreement and Enjoin Defendant filed by Plaintiff Bradford Square Nursing, LLC. [R. 7.]  By way of this motion, the Plaintiff asks the Court to compel the Defendant, Donna Cornett, to pursue any claims arising out of the decedent Nell Estill's residency at Bradford Square through arbitration, and to enjoin Cornett from pursuing such claims in Kentucky state court.  Cornett calls into question Nell Estill's competency at the time she entered the arbitration agreement with Bradford Square, thereby challenging the validity of the agreement.  After reviewing the parties' arguments and the relevant case law, the Court DENIES the Plaintiff's motion and orders limited discovery regarding Ms. Estill's competency.

**I**

Bradford Square Nursing, Inc., is a nursing home.  Nell Estill, now deceased, executed various admissions documents to Bradford Square on December 26, 2014, one of which was an arbitration agreement.  [R. 7 at 1.]  However, on or about July 6, 2015, Defendant Donna Cornett, daughter and executrix of the estate of Nell Estill, filed an action in Franklin Circuit

Court seeking damages for alleged injuries to Ms. Estill during her residency at Bradford Square. [*Id.* at 3.]

Ms. Cornett attempts to avoid the arbitration agreement and challenges it enforceability. She testifies her mother began exhibiting signs of dementia in 2012 and was diagnosed with early dementia later that year. [R. 9-1 at 1.] On November 5, 2012, Estill executed a Durable Power of Attorney designating Cornett as her agent. [*Id.*] According to Cornett, Estill exhibited "the signs and symptoms of at least moderate dementia" by December 2014, and Estill "was incapable of understanding basic legal concepts and was unable to handle her legal and business affairs." [*Id.* at 2.] When Estill signed Bradford Square's arbitration agreement on December 26, 2014, "she not only had dementia but also was on oxycodone as a result of her recent surgery." [*Id.*] Cornett testifies that in her personal opinion and professional opinion as a nurse, her mother did not and could not understand the nature of the arbitration agreement. [*Id.*]

Bradford Square argues that Cornett, by challenging Estill's competency, has raised a "threshold question of arbitrability," and that even this dispute regarding enforceability is properly resolved through arbitration rather than before this Court. [*See* R. 10.] The relevant portion of the arbitration agreement reads:

> Any and all claims or controversies arising out of or in any way relating to this Agreement or the Patient's stay at the Center, including all prior stays at the Center, *including disputes regarding interpretation and/or enforceability of this Agreement*, whether arising out of state or federal law, whether existing now or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, negligence, tort or breach of statutory duties (including, without limitation, claims based on personal injury or death), regardless of the basis for any duty or of the legal theories upon which the claim is asserted, shall be submitted to binding arbitration.

[R. 7-2 at ¶ 2 (emphasis added).] Cornett argues the Court should not compel arbitration where the decedent's competency has been called into question.

**II**

The primary issue presented by the parties' arguments concerns the proper forum for challenging the enforceability of an arbitration agreement. Should this Court determine whether the arbitration agreement stands in light of Estill's alleged incompetency, or should an arbitrator? As an initial matter, the Court notes the Federal Arbitration Act indisputably applies to arbitration agreements executed in connection with nursing home admission. *See, e.g.*, *Richmond Health Facilities-Kenwood, LP v. Nichols*, No. 5:14-141-DCR, 2014 WL 4063823, at *9 (E.D. Ky. Aug. 13, 2014); *Brookdale Senior Living, Inc. v. Caudill*, No. 5:14-098-DCR, 2014 WL 34210783, at *9 (E.D. Ky. July 10, 2014). Further, the Court considers motions to compel arbitration in light of the strong federal policy favoring dispute resolution through arbitration. *See Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

The Sixth Circuit Court of Appeals has indicated the presumption in favor of agreed arbitration "extends to a range of questions" that may arise about the agreement. *Teamsters Local Union 480 v. United Parcel Service, Inc.*, 748 F.3d 281, 289 (6th Cir. 2014). As a result, attacks on the "validity" of the arbitration agreement should generally be resolved through arbitration.[1] *Id.* However, questions about "contract formation"—whether the parties entered into a valid agreement in the first instance—are questions for the court. *Id.* Indeed, any challenge to the arbitration agreement specifically, on "such grounds as exist at law or in equity for revocation of any contract," should be resolved by the court before the court orders compliance with an arbitration agreement. *Milan Express Co. v. Applied Underwriters Captive Risk Assurance Co.*, 590 F. App'x 482, 485-86 (6th Cir. 2014) (citing *Rent-A-Center, West, Inc.*

---

[1] The Sixth Circuit noted the United States Supreme Court typically uses the word "validity" to refer "only to questions of the applicability of contractual defenses." *Teamsters*, 748 F.3d at 289 n. 4 (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 2778 n. 2 (2010) (explaining that "[t]he issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded'")).

3

*v. Jackson*, 561 U.S. 63, 70-71 (2010)).  The Sixth Circuit has instructed district courts reviewing these types of challenges—which include, for example, forgery, unconscionability, and lack of consideration—to invalidate arbitration clauses only where the evidence is such that a reasonable fact-finder could conclude no valid arbitration agreement existed.  *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386, 397-98 (6th Cir. 2003) (citing *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).  Further, the Sixth Circuit has indicated that "[b]efore compelling an unwilling party to arbitrate, the court must engage in a *limited review* to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties." *Id.* at 398 (emphasis in original) (citing *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

Ms. Estill's competency to enter the arbitration agreement is a question about contract formation that is properly before this Court and not an arbitrator.  Accordingly, the Plaintiff's motion will at this time be denied.  Before the Court can compel arbitration, the Court must determine whether Ms. Estill was competent to enter into the agreement in the first instance.  The Court looks to state law contract formation principles to conduct this analysis.  *See Fazio*, 340 F.3d at 393-94.

In Kentucky, an executed contract "will not lightly be set aside in the absence of clear and convincing evidence."  *Lausman v. Brown*, 168 S.W.2d 579, 585 (Ky. App. 1943).  Instead, the party seeking to challenge the contract must put forth "some direct proof sufficient to convince the minds at the court" that the incompetent individual did not and could not understand her actions when she made them.  *Revlett v. Revlett*, 118 S.W.2d 150, 154 (Ky. App. 1938).  Overall, to determine a party's mental competency, "courts will look only to the adequacy of the understanding where the validity of an act is questioned, and neither age,

4

sickness, extreme distress, or debility of the body will affect the capacity to make a contract or conveyance, if sufficient intelligence remains to understand the transaction." *Hall v. Crouch*, 341 S.W.2d 591, 594 (Ky. 1961).

In this case, little evidence exists in the record concerning Ms. Estill's competency besides the two-page affidavit of Defendant Cornett, wherein Cornett states her mother suffered from dementia and was possibly under the influence of oxycodone at the time of signing the agreement. [*See* R. 9-1.] Before determining Ms. Estill's competency pursuant to Kentucky law, the Court requires additional evidence.

Ultimately, the Court disagrees with Plaintiff Bradford Square regarding the proper forum for the Defendant's competency challenge. The matter is clearly one for the Court rather than an arbitrator. But there is currently not enough relevant evidence in the record for the Court to determine Ms. Estill's competency at the time she entered into the arbitration agreement. Before ruling on the issue, the Court will order limited discovery and, after conclusion of that discovery, it will consider a new motion to compel arbitration should the party(s) deem it appropriate.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Plaintiff's Motion to Enforce Arbitration Agreement and Enjoin Defendant [R. 7] is **DENIED WITHOUT PREJUDICE**; and

2. This matter is **REFERRED** to Magistrate Judge Edward B. Atkins [*see* Gen. Order

15-1] for the purpose of fashioning a limited discovery plan proportional to the discrete issue of Ms. Estill's competency at the time she entered into the arbitration agreement with Bradford Square. *See* Fed. R. Civ. P. 26(b)(1) (amendment effective Dec. 1, 2015).

This the 2nd day of February, 2016.

Gregory F. Van Tatenhove
United States District Judge